Teresa C. Chow (State Bar No. 237694)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Emails: *tchow@bakerlaw.com*

*Attorneys for Defendant*
SELLERS INTERNATIONAL LLC

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ISAAC SHAPIRO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SELLERS INTERNATIONAL LLC,

Defendant.

**CASE NO.: 3:24-CV-00079-AMO**

**NOTICE OF MOTION AND MEMORANDUM AND POINTS OF AUTHORITY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

*[Filed concurrently with Rule 5.1 Notice and (Proposed) Order]*

DATE: MAY 16, 2024
TIME: 2:00 PM
CTRM: 10

CASE FILED: 01/04/2024

**PLEASE TAKE NOTICE THAT** on May 16, 2024, at 2:00 PM, or as soon thereafter as counsel may be heard, in Courtroom 10 of the United States District Court, Northern District of California, located at Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Sellers International LLC ("Defendant") will and hereby does move this Court for an order dismissing Plaintiff's Complaint with prejudice.

This Motion is made pursuant to Fed. R. Civ. P. 12(b)(6) for Plaintiff's failure to state a claim upon which relief may be granted. Plaintiff's Complaint should be dismissed with prejudice.

## POINTS AND AUTHORITIES

## TABLE OF CONTENTS


Page

I. PLAINTIFF FAILS TO STATE A VPPA CLAIM. ....7

A. Plaintiff Does Not Allege Quimbee Is A "Video Tape Service Provider." ....7

B. Plaintiff Does Not Allege Quimbee Knowingly Disclosed PII. ....9

1. Plaintiff Fails To Allege Quimbee "Discloses" Anything. ....9

2. Plaintiff Fails To Allege That Quimbee Discloses PII. ....10

C. Any "Disclosure" Falls Within The Ordinary Course Of Business Exception. ....11

II. PLAINTIFF FAILS TO STATE A CLAIM UNDER CAL. CIV. CODE § 1799.3. ....12

III. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF CIPA. ....13

A. Plaintiff Has No Reasonable Expectation Of Privacy. ....14

B. Contents of Communications Were Not Disclosed. ....14

C. Plaintiff Fails to Allege the Elements of a Section 631 Violation ....15

D. Plaintiff Fails To Allege An Underlying Violation Of § 631(a). ....17

1. First Clause. ....17

2. Second Clause. ....18

IV. ALTERNATIVELY, THE STATUTES ARE FACIALLY UNCONSTITUTIONAL. ....19

A. The Statutes Are Unconstitutionally Vague in Violation of Due Process. ....19

B. The Statutes Violate The First Amendment. ....20

1. No Substantial Government Interest. ....21

2. The Statutes' Requirements Do Not Materially Advance, And Are Far More Extensive Than Necessary To Serve, Any Government Interest. ....22

C. Alternatively, The Court Should Partially Invalidate The Statutes. ....23

V. ALTERNATIVELY, THE STATUTES ARE UNCONSTITUTIONAL AS APPLIED. ....24

VI. CONCLUSION ....24


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ....20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....8

*Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ....25

*Bd. of Trustees of State Univ. of New York v. Fox,* 492 U.S. 469 (1989) ....23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....8

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ....22, 24

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ....15

*Brown v. Entertainment Merchants Assoc*., 131 S.Ct. 2729 (2011) ....22

*Byars v. Hot Topic, Inc.*, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ....19

*Byars v. Tire*,
No. 5:22-cv-01358-SSS-KKx, 2023 U.S. Dist. LEXIS 22337 (C.D. Cal. Feb. 3, 2023) ....15

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
447 U.S. 557 (1980) ....22

*Connally v. General Constr. Co.*, 269 U.S. 385 (1926) ....20

*F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) ....20, 21

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ....19

*Free Enterprise Fund v. Public Company Accounting Oversight Bd*.,
561 U.S. 477 (2010) ....24

*In re Google Assistant Priv. Litig*., 457 F. Supp. 3d 797 (N.D. Cal. 2020) ....19

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) ....15, 17

*In re Hulu Priv. Litig*.,
No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal Aug. 10, 2012) ....9

*Johnson v. Blue Nile, Inc.,*
No. 20-CV-08183-LB, 2021 WL 3602214 (N.D. Cal. Aug. 13, 2021) ....17

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ....................19

*Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) ....................19, 20

*Massie v. Gen. Motors LLC*,
No. CV 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) ....................15

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ....................14, 18, 19, 20

*McCoy v. Alphabet, Inc.*,
No. 20-CV-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2 2021) ....................15

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2nd Cir. 2017) ....................23

*Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017 (C.D. Cal. 2012) ....................20

*In re Nickelodeon Consumer Privacy Litig*., 827 F.3d 262 (3d Cir. 2016) ....................11

*NovelPoster v. Javitch Canfield Grp*., 140 F. Supp. 3d 938 (N.D. Cal. 2014) ....................20

*Pena v. GameStop, Inc*., 2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) ....................20

*Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949 (E.D. Cal. 2012) ....................16

*Ribas v. Clark*, 38 Cal. 3d 355, 696 P.2d 637 (1985) ....................17

*Robinson v. Disney Online*, 152 F. Supp. 3d 176 (S.D.N.Y. 2015) ....................10, 12

*Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045 (9th Cir. 2015) ....................12

*Rogers v. Ulrich*, 52 Cal. App. 3d 894, 125 Cal. Rptr. 306 (Ct. App. 1975) ....................17

*Safeco Inc. Co. v. Burr*, 551 U.S. 47 (2007) ....................14

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ....................21, 23

*Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618 (7th Cir. 2014) ....................12

*U.S. v. Forrester*, 512 F.3d 500 (9th Cir. 2008) ....................15

*U.S. West, Inc. v. FCC*, 182 F.3d 1224 (10th Cir. 1999) ....................22

*In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................8

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................18

*Yale v. Clicktale Inc.*,
No. 20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15 2021) ....................................15

*Yockey v. Salesforce, Inc.*,
No. 22-CV-09067-JST, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023).................................18

*Yoon v. Lululemon, USA Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021)........................................16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## STATEMENT OF ISSUES

Sellers International LLC ("Quimbee") is an educational resource for law students, offering law school study aids such as case briefs and outlines. Plaintiff Isaac Shapiro ("Plaintiff") alleges violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*. ("VPPA"), California Civil Code § 1799.3 ("Cal. Code. § 1799.3"), and California Penal Code § 631 ("CIPA") based on allegations that Quimbee shared personally identifiable information ("PII") and video viewing information with HubSpot, Inc. ("HubSpot"), Quimbee's customer relations management platform, through HubSpot's code on www.Quimbee.com (the "Website").

Plaintiff's Complaint lacks crucial allegations to bring such a claim against Quimbee. Plaintiff fails to allege Quimbee is a video tape service provider or that an *ordinary person* would be able to glean video viewing history from the information allegedly shared with HubSpot. Moreover, Quimbee did not disclose any PII, as HubSpot is merely the tool that Quimbee uses to collect information about Quimbee's own customers, exclusively for Quimbee's own use. If the VPPA is interpreted in the manner Plaintiff advocates, the VPPA violates Due Process and the First Amendment. For similar reasons, Plaintiff fails to plead a violation of § 1799.3. Finally, Plaintiff's CIPA claim fails because Quimbee did not aid or abet its software vendor, and Plaintiff has failed to allege that HubSpot violated CIPA.

## STATEMENT OF FACTS

Plaintiff alleges Quimbee "is an online study aid service for law students." (Compl. ¶ 12.) Plaintiff alleges Quimbee is a "'video tape service provider' because it creates, hosts, and delivers thousands of videos on its website . . . ." (Compl. ¶ 57.) Plaintiff alleges he "created a Quimbee account … and began paying for a subscription," and that he "frequently visited Quimbee to watch case brief videos for studying." (*Id.* ¶¶ 41-42.) Plaintiff alleges that when he visited the Website, Quimbee "disclosed his event data, which recorded and disclosed the video's URL and title as well as Plaintiff's name and email address to HubSpot in English and Base64." (Compl. ¶ 43.) Plaintiff seeks to assert claims on a classwide basis. (*Id.* ¶¶ 46-48.)

## ARGUMENT

## I. PLAINTIFF FAILS TO STATE A VPPA CLAIM.

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 & 679 (2009). To state a VPPA claim, Plaintiff must allege Quimbee (1) is a video tape service provider; (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer. *See* 18 U.S.C. 2710(b)(1).

### A. Plaintiff Does Not Allege Quimbee Is A "Video Tape Service Provider."

A "video tape service provider" ("VTSP") is defined as "any person, ***engaged in the business***… ***of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials*** . . . ." 18 U.S.C. § 2710(a)(4) (emphasis added). The Complaint contains no allegations regarding "prerecorded video cassette tapes," nor does it allege Quimbee is "engaged in the business" of rental, sale or delivery of "similar audio-visual materials." 18 U.S.C. § 2710(a)(4). Quimbee's business does not fall within the statutory language.

***First***, Plaintiff has not alleged the "engaged in the business" element. "Business" is "a usually commercial or mercantile activity engaged in as a means of livelihood." *See* "business" (def. 1a), https://www.merriam-webster.com/dictionary/business (last accessed Feb. 18, 2024). "Livelihood" is defined as "means of support or subsistence." *See* "livelihood" (def. 1), https://www.merriam-webster.com/dictionary/livelihood (last accessed Feb. 18, 2024). Thus, to be "engaged in the business" of a particular activity, that activity must be the company's "means of support or subsistence." *See In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) ("the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose"). In other words, delivering video content must be "a focus of the defendant's work" and businesses which are only "peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." *Id.* at 1221-22.

Plaintiff does not allege Quimbee's business is substantially involved in the conveyance of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

video content and significantly tailored to that purpose, or that renting, selling, or delivering videos is a focus of Quimbee's work.[1] To the contrary, Plaintiff himself describes Quimbee as "online study aid service." (Compl. ¶ 12.) In other words, by Plaintiff's own allegations, the focus of Quimbee's work is providing educational materials to law students.

Plaintiff goes on to allege in conclusory fashion that Quimbee is a VTSP "because it creates, hosts, and delivers thousands of videos on its website." (Compl. ¶ 57.) If an entity could qualify as a VTSP merely because it has a website which contains videos (among other content), virtually every single individual or entity with a modern website could be swept within this definition. Such an interpretation would be absurd and contrary to the statutory language.

***Second***, Plaintiff fails to allege the "similar audio-visual materials" element. "Congress's concern with privacy and protecting the confidentiality of an individual's choices is relevant context to the Senate Report's discussion of 'similar audio visual materials, such as laser discs, open-reel movies, and CDI technologies.'" *In re Hulu Priv. Litig*., No. C 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal Aug. 10, 2012) (citing S.Rep. No. 100–599 at 12). The "similar" materials contemplated by Congress were the hours-long video recordings such as motion pictures ("open-reel movies") made available at the typical brick-and-mortar stores that existed when Congress drafted the VPPA. *See also* laser disc (def. 1) (https://www.merriam-webster.com/dictionary/laser%20disc) (last visited Feb. 18, 2024) ("one containing a video recording (as of a motion picture)." Such types of "audio visual materials" differ greatly from Quimbee's case brief videos, which are educational materials no more than six minutes in length. (Compl. ¶ 2.) And Plaintiff does not allege Congress considered, let alone intended to regulate, businesses that distribute such materials.

---

[1] Although the Court must accept all factual allegations in a complaint as true, Plaintiff's allegation that "Quimbee offers its consumers more than 44,800 Quimbee-made Case Brief videos" erroneously conflates written case briefs with video material. Plaintiff's own source demonstrates Quimbee's statistic referred to ***written*** case briefs, not videos: "Quimbee has over [44,800] case briefs keyed to 983 casebooks. . . . You can be confident that the brief you're ***reading*** was ***written*** by someone with a deep knowledge of the law. As with all Quimbee content, Quimbee case briefs are ***written*** by real attorneys." Quimbee, *Understand Your Casebook Readings in Seconds*, https://www.quimbee.com/case-briefs-overview (last visited Feb. 12, 2024) (emphasis added); *see also* (Compl. ¶¶ 16-17, n.7.).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### B. Plaintiff Does Not Allege Quimbee Knowingly Disclosed PII.

Absent consent, a VTSP cannot "knowingly disclose[], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1); *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). "[T]he information disclosed by a video tape service provider must, at the very least, identify a *particular person*—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179.

#### 1. Plaintiff Fails To Allege Quimbee "Discloses" Anything.

Plaintiff fails to allege Quimbee "discloses" anything because Plaintiff merely alleges Quimbee uses a tool called HubSpot to collect data about Quimbee's own customers, for Quimbee's own use. In particular, Plaintiff alleges "HubSpot is a ***customer relations management platform*** which offers its users the power to automate marketing, lead generation, and sales engagement tools. Specifically, when HubSpot tracking code is imbedded in a website's code, it tracks a user's interactions with the website ***to assist the website owner with compiling and managing website analytics*** for marketing, understanding website usage, and automating chat bots familiar with routine customer inquiries, and a host of other marketing and ***customer management benefits*** derived from, and reliant on, collecting website visitor and user data." (Compl. ¶¶ 20-21 (emphasis added).)

"Disclose" means "to make known or public." *See* https://www.merriam-webster.com/dictionary/disclose (last visited Feb. 23, 2024). There are no allegations that Quimbe has made anything "known or public." To the contrary, Plaintiff's own allegations are that Quimbee collects information about its ***own customers***, for its ***own use***. The fact that Quimbee uses one of the most popular customer relations management platforms to do so is entirely irrelevant. If using software developed by another company to gather information about one's own customers constituted "disclosure," then no lawyer could ever use Outlook to communicate with



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

a client without destroying attorney-client privilege by "disclosing" the contents of the email to Outlook. That interpretation would be contrary to the plain language of the statute and the ordinary meaning of the word "disclose."

### 2. <u>Plaintiff Fails To Allege That Quimbee Discloses PII.</u>

A request header is not PII. The most basic requirement of a VPPA claim is disclosure of "the kind of information that would ***readily permit an ordinary person*** to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig*., 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added). Plaintiff's complaint includes this image as the illustrative example of the type of "disclosure" on which he bases his claims:




**Figure 7**

(Compl. ¶ 23, Figs. 5-7.[2]) That, on its face, is not "information that would ***readily permit an ordinary person*** to identify a specific individual's video-watching behavior." Even Plaintiff alleges he had to take multiple steps to "translate" this data into English, including using a Base64 decoder to decode the information or ChatGPT to identify the coding language. (Compl. ¶ 29, 33.) Having to employ a decoder or engage with artificial intelligence to identify alleged PII demonstrates that an ordinary person cannot identify a user's video-watching behavior through the

[2] Figure 7 shows "https" rather than "http" is used, demonstrating the information is sent in an encrypted format readable only by sender and recipient. *See* https://www.healthit.gov/faq/what-does-https-web-address-mean (last visited Feb. 27, 2024) ("If you see https, the session between the web server and the browser on the mobile device you are using is encrypted.").

alleged disclosure at issue. Further, although Plaintiff contends that it is "immaterial" that the alleged PII disclosure is in Base64 language instead of English – this compares apples with oranges and places human language into the same category as programming languages. (Compl. ¶ 34.).

This multi-step investigative process does not make the data PII, and reflects the position that this Court should adopt — the information disclosed must ***itself*** do the identifying, not a decoder or AI tool. *See Robinson,* 152 F. Supp. 3d at 182 ("it is the information actually 'disclos[ed]' by a 'video tape service provider,' 18 U.S.C. § 2710(b)(1), ***which must itself do the identifying*** that is relevant for purposes of the VPPA (literally, 'information which identifies')—***not information disclosed by a provider, plus other pieces of information*** collected elsewhere by non-defendant third parties.") (emphasis added). This programming code is not information that would readily permit an ordinary person to identify a specific individual's video-watching behavior and is, therefore, not covered by the VPPA.

**C. Any "Disclosure" Falls Within The Ordinary Course Of Business Exception.**

Even if Plaintiff had alleged the elements of a VPPA claim (he has not), Quimbee's conduct would fall within the VPPA's exception for disclosures "incident to the ordinary course of business," which is defined to include "debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2), (b)(2)(E). In *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 621 & 625-26 (7th Cir. 2014), the court held Redbox's disclosure of customer information to a third party which ran Redbox's customer service call center fell squarely within the ordinary course of business exception as "order fulfilment" or "request processing" and consequently did not violate the VPPA. The Ninth Circuit expressly agreed with *Sterk*'s analysis in *Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) and held that disclosures between related corporate entities likewise qualify for the ordinary course of business exception. Additionally, the legislative history discussing the ordinary course of business exception expressly mentioned "service providers" such as "computer services" as falling within the exception. S. REP. 599, 14, 1988 U.S.C.C.A.N. 4342-1, 4342–12.

Here, Plaintiff explicitly alleges Quimbee uses HubSpot as a tool to collect information

about Quimbee's own customers, for Quimbee's own use: "HubSpot is a ***customer relations management platform*** which offers its users the power to automate marketing, lead generation, and sales engagement tools. Specifically, when HubSpot tracking code is imbedded in a website's code, it tracks a user's interactions with the website ***to assist the website owner with compiling and managing website analytics*** for marketing, understanding website usage, and ***automating chat bots familiar with routine customer inquiries***, and a host of other marketing and ***customer management benefits*** derived from, and reliant on, collecting website visitor and user data." (Compl. ¶¶ 20-21 (emphasis added).) Thus HubSpot is akin to the outsourced call center in *Sterk*.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER CAL. CIV. CODE § 1799.3.

Section 1799.3 provides: "[n]o person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual." Cal. Civ. Code § 1799.3(a). Only "willful" violations can result in civil penalties. *Id*. § 1799.3(c). Plaintiff's Section 1799.3 claims must be dismissed for the same reasons described above.

***First***, Quimbee is not a "video recording sales or rental service" because educational platforms like Quimbee do not "sell" or "rent" video recordings.[3] *Supra* Section I(A). Plaintiff purchased a subscription, which is a license to access Quimbee's content. Plaintiff's own allegations recognize that Quimbee does not sell or rent video recordings: Quimbee "sells ***<u>access</u>*** to its online platform, Quimbee.com, which creates, hosts, and delivers thousands of videos on its website." (Compl. ¶ 68 (emphasis added).)

***Second***, Quimbee does not "disclose" anything, but simply uses a popular customer relations management platform to collect information about its ***own customers***, for its ***own use***. *Supra* Section I(B)(1).

***Third***, even if there was a disclosure, Section 1799.3 does not apply to "a disclosure of names and addresses only for commercial purposes." Cal. Civ. Code § 1799.3(6). As Plaintiff

[3] Section 1799.3 does not refer to "delivery."



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

recognizes, HubSpot is "a customer relations management platform which offers its users the power to automate marketing, lead generation, and sales engagement tools." (Compl. ¶ 20.) Quimbee uses HubSpot to assist with its website analytics and marketing, and to the extent that Plaintiff's name or email address was disclosed (it was not), it was for commercial purposes.

***Fourth***, the information allegedly transmitted does not constitute "personal information" because it would not readily permit an ordinary person to identify a specific individual. *Supra* Section I(B)(2). Moreover, California courts have rejected the idea that a person's name alone can constitute "personal information" when it is not connected to some other identifying data such as a social security number—and here, the request header allegedly transmitted amounts to even less than a person's name. *See Moghadam*, 169 Cal.App.4th at 484.

***Fifth***, Plaintiff conflates knowing disclosure with a willful violation of § 1799.3: "Defendant knowingly disclosed Plaintiff's personal information. . . ." (Compl. ¶ 71.) Section 1799.3 requires a willful *violation*, and Plaintiff fails to allege Quimbee willfully violated Section 1799.3. *See* Cal. Civ. Code § 1799.3(c)-(d). A violation is not willful where the defendant's interpretation of the statute is not "objectively unreasonable." *See Safeco Inc. Co. v. Burr*, 551 U.S. 47, 69-70 (2007). For all the reasons discussed above, there are numerous reasonable bases to conclude that Quimbee and the conduct at issue in this case are not covered by the statute—and at a minimum, construing the statute as Quimbee proposes is not objectively unreasonable.

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF CIPA.

CIPA § 631 makes three distinct and mutually independent patterns of conduct unlawful: (1) "'intentional wiretapping [with any telegraph or telephone],' (2) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'"[4] *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires

[4] Plaintiff does not appear to allege the third pattern of conduct, use or communication of information obtained as a result of engaging in the two previous activities.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Id.*

**A. Plaintiff Has No Reasonable Expectation Of Privacy.**

Plaintiff does not have a reasonable expectation of privacy in the browsing information allegedly sent to HubSpot, a webpage URL that includes the name of a case keyed to a law school textbook. (Compl. ¶ 81.) Multiple courts have held internet users do not have a reasonable expectation of privacy in such website usage data. *See U.S. v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (no reasonable expectation of privacy in browsing information because users "should know that this information is provided to and used by Internet service providers for the specific purposes of directing the routing information."); *Massie v. Gen. Motors LLC*, No. CV 21-787-RGA, 2022 WL 534468, at *2, 5 (D. Del. Feb. 17, 2022) ( no reasonable expectation of privacy over "website users' mouse movements, clicks, and keystrokes, producing 'video-accurate renders of real visits' to websites" and "the date, time, and duration of a user's visit, as well as the user's IP address, 'location at the time of the visit[ ],' browser type, and device's operating system.").

**B. Contents of Communications Were Not Disclosed.**

Several courts have held the "contents of a communication" includes "any information concerning the substance . . . of that communication," but does not include record information. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020); *see also Byars v. Tire*, No. 5:22-cv-01358-SSS-KKx, 2023 U.S. Dist. LEXIS 22337, at *11 (C.D. Cal. Feb. 3, 2023) (holding same). Record information refers to the characteristics of the communication, "generated in the course of the communication, such as the name, address, and subscriber number or identity of a subscriber or customer." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021). Record information also includes "usernames, passwords," the "origin, length, and time of a call, [and] geolocation data." *Id.*; *Brodsky*, 445 F. Supp. 3d 110; *see McCoy v. Alphabet, Inc.*, No. 20-CV-05427-SVK, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2 2021).

Indeed, in *Yale v. Clicktale Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400, *1, *3 (N.D. Cal. Apr. 15 2021), plaintiff's CIPA claims were dismissed because all information collected was

"non-content information" where Gap's website used a product that "capture[d] ***each of Plaintiff's keystrokes and mouse clicks*** on the [w]ebsite[] . . . [and] also captured the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device." *See also Yoon v. Lululemon, USA Inc*., 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (citing courts that have held ***keystrokes, mouse clicks, pages viewed***, shipping and billing information, date and time of website visit, duration of the visit, and IP address are record information and not protected by CIPA) (emphasis added).

Here, Plaintiff alleges that the information collected via the HubSpot customer relations management platform is much less than every keystroke and mouse-click that Plaintiff took on the Website, and rather only alleges that search terms embedded in URL strings sent through code were allegedly collected by HubSpot. Therefore, Plaintiff's CIPA claim must be dismissed because no contents of communications were disclosed but rather only record information.

**C. Plaintiff Fails to Allege the Elements of a Section 631 Violation**

Plaintiff alleges that HubSpot, a non-party to the suit, violated CIPA, and that Quimbee "aided HubSpot Inc., agreed with HubSpot, Inc., and conspired with HubSpot, Inc. to intercept … communications by implementing the HubSpot tracking code ..." (Compl. ¶ 83.) To state a CIPA claim, Plaintiff must plead that HubSpot used a "machine, instrument, or contrivance" to "intentionally [tap] electronically or otherwise, the lines of internet communication between Plaintiff and Second California Subclass Members[,]" and that Quimbee aided and abetted HubSpot's conduct. (Compl. ¶¶ 76, 79-80.) Plaintiff fails to plead these elements.

Quimbee cannot be held liable under a Section 631 aiding and abetting theory of liability because it was a party to the communication with Plaintiff. (Compl. ¶ 81 ("In particular, the HubSpot tracking code recorded communications between Plaintiff and the Second California Subclass Members on the one hand ***and Quimbee on the other***, by collecting the search terms for Case Brief videos entered by the consumer and storing that search in the form of a recorded URL which subsequently disclosed the video name and was accessible to HubSpot.") (emphasis added)); *see Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 954-55 (E.D. Cal. 2012) (granting

summary judgment as to Section 631 aiding and abetting claims "[g]iven the settled nature of the third-party focus of section 631"); *Graham v. Noom, Inc.*, No. 20-CV-06903-LB, 2021 WL 3602215, at *1 (N.D. Cal. Aug. 13, 2021) ("FullStory is not a third-party wiretapper because it is not an outsider and instead is a software vendor that provides a service that allows Noom to analyze its own data."); *Johnson v. Blue Nile, Inc.,* No. 20-CV-08183-LB, 2021 WL 3602214, at *1 (N.D. Cal. Aug. 13, 2021) ("The reasoning in *Graham v. Noom* controls here: FullStory is not a third-party wiretapper because it is not an outsider and instead is a software vendor that provides a service that allows Blue Nile to analyze its own data.").

"Only a third party can listen to a conversation secretly. By contrast, a party to a communication can record it (and is not eavesdropping when it does)." *Graham*, 533 F. Supp. 3d at 831. Courts in this district have grappled with whether a third-party is like the tape recorder in *Rogers* or the *friend* in *Ribas*. *Compare Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899, 125 Cal. Rptr. 306, 309 (Ct. App. 1975) ("It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation."), *with Ribas v. Clark*, 38 Cal. 3d 355, 363, 696 P.2d 637, 642 (1985) ("Thus, we conclude that the use of extension telephones for eavesdropping on confidential communications does not fall within this exception to its provisions."). Here, Plaintiff's allegations demonstrate HubSpot is like the tape recorder in *Rogers*, thus eliminating any liability for aiding and abetting because there is no underlying wiretapping. *Cf. Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021).

Based on Plaintiff's own allegations, Quimbee implemented HubSpot to "track[] a user's interactions with the website to assist the website owner [Quimbee] with compiling and managing website analytics for marketing, understanding website usage, automating chat bots familiar with routine customer inquiries, and a host of other marketing and customer management benefits derived from, and reliant on, collecting website visitor and user data." (Compl. ¶ 21.) Essentially, HubSpot is the tool that Quimbee uses to collect information about Quimbee's own customers. These actions do not constitute wiretapping by a third party.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Even if this Court were to find that HubSpot's actions were akin to *Ribas*, Plaintiff's claim still fails because he has not alleged anything to infer that HubSpot can use the alleged communications for any purpose other than to provide its customer relations management solution to Quimbee. *Cf. Yockey v. Salesforce, Inc.*, No. 22-CV-09067-JST, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023) ("Plaintiffs allege that Chat 'is run from Salesforce web servers,' that communications over Chat are 'routed through a Salesforce server, that Salesforce 'directly receives the electronic communications of visitors,' that Salesforce 'analyzes the customer-support agent interactions in real time to create live transcripts of communications,' and that 'supervisors can view transcripts in real time.' These allegations do not support a reasonable inference that Salesforce has the capability to use these communications for any purpose other than furnishing them to Kaiser. Chat, as alleged, is therefore more akin the tape recorder in *Rogers*, and Plaintiffs have thus failed to state a claim pursuant to Section 631.") (internal citations omitted). Plaintiff does not allege HubSpot can independently use the data it collects, so the CIPA claim fails.

### D. Plaintiff Fails To Allege An Underlying Violation Of § 631(a).

#### 1. <u>First Clause.</u>

To state a claim under Section 631(a)'s first clause, Plaintiff must allege HubSpot "intentionally tap[ped], or ma[de] any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument …." *Mastel*, 549 F. Supp. 3d at 1134 (quoting Cal. Pen. Code § 631(a)). Plaintiff alleges HubSpot "recorded communications between Plaintiff and the Second California Subclass Members on the one hand and Quimbee on the other, by collecting the search terms for Case Brief videos entered by the consumer and storing that search in the form of a recorded URL which subsequently disclosed the video name and was accessible to HubSpot." (Compl. ¶ 81.) Based on these allegations, Plaintiff is clearly asserting that HubSpot tapped or made an unauthorized connection with a website, not a telephone line. However, cases are clear that Section 631(a)'s first clause does *not* cover internet-based communications between a website and its visitor. *See Williams v. What If Holdings*, LLC, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("[T]he first clause of Section 631(a) concerns



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

telephonic wiretapping specifically, which does not apply to the context of the internet."); *Mastel*, 549 F. Supp. 3d at 1134-35 (collecting decisions holding that this prohibition is limited to communications in "telegraph or telephone" contexts, and dismissing CIPA claim that failed to allege tapping of such communications); *see also In re Google Assistant Priv. Litig*., 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (holding same); *Licea*, 2023 WL 2415592, at *5 (holding same); *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at *8 n.8 (C.D. Cal. Feb. 14, 2023) (holding same).[5]

Because any wiretapping was allegedly done through embedded software code on communications made over the internet and not a "telegraph or telephone wire," Plaintiff cannot establish an underlying violation by HubSpot under the first clause of Section 631(a).

**2. Second Clause.**

The second clause of § 631(a) penalizes a party who "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication ***while the same is in transit*** or passing over any wire, line, or cable, or is being sent from, or received at any place within this state . . . ." Cal. Penal Code § 631(a) (emphasis added).

The information allegedly collected by HubSpot was not "in transit." *Mastel,* 549 F. Supp. 3d at 1136. For a communication "to be intercepted," it "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. 2002) (analyzing in context of Wiretap Act). The Ninth Circuit reasoned "[t]his conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" *Id*. (quoting Webster's Ninth New Collegiate Dictionary 630 (1985)).

Courts applying CIPA and the federal Wiretap Act have acknowledged that, given the speed of modern internet communications, their "application to that form of electronic

---

[5] Plaintiff's citation to *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) to suggest that CIPA covers "computers, the Internet, and email" is unavailing, as it addressed Facebook's tracking of browsing histories when its users visited ***third-party websites***, which is not the case here. (Compl. ¶ 77.) Although the Court held Facebook was not exempt from liability under CIPA, it did not "opine whether the Plaintiffs adequately pleaded the other requisite elements of the statutes, as ***those issues are not presented on appeal***." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608 (emphasis added).

communication is undoubtedly limited" because internet communications travel so quickly that there is only an incredibly narrow window during which an interception could occur. *NovelPoster v. Javitch Canfield Grp*., 140 F. Supp. 3d 938, 951-52 (N.D. Cal. 2014). Indeed, numerous courts have held that while internet communications may be improperly accessed either on the originating or receiving end, they are not typically intercepted during transmission. *Id*.[6]

Here, Plaintiff does not allege any facts plausibly showing HubSpot intercepted the contents of Plaintiff's communications while in transit. (*See* Compl. ¶ 82.) Plaintiff has not alleged HubSpot intercepts those communications before or at the same time they are provided to Quimbee on the Website. Moreover, Plaintiff fails to allege any facts demonstrating HubSpot "read," "attempted to read," or attempted "to learn the contents of any communication" while it was "in transit." *See Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) ("there [was] no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received.").

## IV. ALTERNATIVELY, THE STATUTES ARE FACIALLY UNCONSTITUTIONAL.

### A. The Statutes Are Unconstitutionally Vague in Violation of Due Process.

If the VPPA, § 1799.3, and CIPA are interpreted in the manner that Plaintiff advocates, then they are unconstitutionally vague in violation of the Due Process Clause of the Fifth and Fourteenth Amendments. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citing *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law").) Due Process "requires the invalidation of laws that are impermissibly vague," and "the void for vagueness doctrine addresses

---

[6] *See also, e.g., Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012); *Licea v. Am. Eagle Outfitters, Inc*., 2023 WL 2469630, at *10 (C.D. Cal. Mar. 7, 2023); *Mastel*, 549 F. Supp. 3d at 1137; *Pena v. GameStop, Inc*., 2023 WL 3170047, at *5 (S.D. Cal. Apr. 27, 2023).

at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Id*.

The recent explosion of VPPA litigation[7] is due to the VPPA's vague restriction on "any person, engaged in the business . . . of rental, sale or *delivery* of prerecorded video cassette tapes or *similar audio visual materials*" from knowingly disclosing "to any person, *personally identifiable information* concerning any consumer of such provider." 18 U.S.C. § 2710(a)-(b) (emphasis added). Section 1799.3's references to "personal information" and "any record" are likewise vague. Cal. Civ. Code § 1799.3(a). Plaintiffs in cases like this one are advocating for the statutes to apply to a broad range of entities that had no notice the statutes even applied to them or to the conduct at issue in this case. Entities are being arbitrarily and discriminatorily subjected to class action lawsuits and potentially could face multi-million-dollar statutory damages and reputational injury based on their otherwise legal marketing practices. *See F.C.C.*, 567 U.S. at 255 ("reputational injury provides further reason for granting relief" where sanctions records were public and could have adverse impact on defendant's reputation that audiences would likely consider). If the statutes are interpreted in the manner Plaintiff is advocating, such that a business cannot use a software tool developed by a third party to collect information about its own customers and exclusively for its own use, they are unconstitutionally vague.

**B. The Statutes Violate The First Amendment.**

The First Amendment states, "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. Restrictions on access to information in private hands, such as customer data, violate the First Amendment. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 577 (2011) (statute purporting to restrict pharmacies from selling retained information about drug prescribing habits of doctors to pharmaceutical companies for marketing purposes violated First

[7] Indeed, since 2022 alone, well over 100 VPPA complaints have been filed against defendants from all sectors and industries, which simply provide videos on their websites, including Hallmark Cards, NBCUniversal Media (owner of Today.com), Intuit, Gannett Company (largest newspaper publisher in the U.S.), Weight Watchers, The Philadelphia Inquirer, the National Football League (d/b/a the NFL), Major League Baseball Advanced Media L.P., Equifax, and La-Z-Boy.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Amendment); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1224 (10th Cir. 1999) (FCC regulation violated First Amendment where it restricted telecommunication carriers from using customer information "that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship" because it made speech more difficult by limiting ability of carriers to target speech to particular audience).

Like the information at issue in *IMS Health* and *U.S. West*, the information at issue in this case is commercial speech. As such, any restriction on that speech must meet three conditions: (1) the government must have a "substantial interest in regulating the speech," (2) the regulation must "directly and materially advance[] that interest," and (3) the regulation must be "no more extensive than necessary to serve the interest." *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980). Additionally, the "language may not be unconstitutionally vague or its prohibitions too broad in their sweep, failing to distinguish between conduct that may be proscribed and conduct that must be permitted." *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973). The statutes do not meet any of these conditions.



**1. <u>No Substantial Government Interest.</u>**

The government has no "substantial interest" in restricting companies' ability to use software developed by third parties to collect information about the companies' own customers, for the companies' own use. Nor does the government have any "substantial interest" in restricting disclosure of information concerning video viewing. As the Supreme Court explained, "without persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription, a legislature may not revise the judgment [of] the American people, embodied in the First Amendment, that the benefits of its restrictions on the Government outweigh the costs." *Brown v. Entertainment Merchants Assoc*., 131 S.Ct. 2729, 2734 (2011). There is no "persuasive evidence" that restrictions on software solutions or video viewing information are "part of a long tradition of proscription." *Id.* To the contrary, companies routinely select the software vendors that best fit their business, and the history of movies began with movie-goers attending movie showings in public theaters.

**2. <u>The Statutes' Requirements Do Not Materially Advance, And Are Far More Extensive Than Necessary To Serve, Any Government Interest.</u>**

Even if the government does have a "substantial" interest, "[t]here must be a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" *Sorrell*, 564 U.S. at 572 (quoting *Bd. of Trustees of State Univ. of New York v. Fox,* 492 U.S. 469, 480 (1989)). "These standards ensure … that the State's interests are proportional to the resulting burdens placed on speech…" *Id.*

The consent requirements in § 2710(b)(2)(B)(i)-(iii)[8] fail these standards. The very existence of § 2710(b)(2)(B) confirms any purported privacy interest is not limitless, but rather ends once "informed, written consent" is obtained. Congress could have, and should have, stopped there: the phrasing "informed, written consent … ***that*** …" implicitly acknowledges informed consent can be obtained in many ways, rather than requiring the elements in subsections (i)-(iii). 18 U.S.C. § 2710(b)(2)(B) (emphasis added.) Indeed, elsewhere in the federal code, "implied consent" stands on its own as a principle subject to rulemaking, *see, e.g.*, 38 U.S.C. § 7331, underscoring the lack of a single definition.

But the VPPA does not stop at informed consent. Instead, § 2710(b)(2)(B)(i)-(iii) creates onerous and arbitrary specifications that do not materially advance the purported government interests and go far beyond the prevailing understanding of enforceability of online Terms and Conditions or Privacy Policies. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2nd Cir. 2017) (explaining "clickwrap" agreements are "routinely" enforced). The ample case law regarding enforceability of website terms does not prioritize "distinct and separate" consent, temporal limitations on consent, or providing opportunity for withdrawal (*see id.*), because the incremental

[8] Section 2710(b)(2)(B) requires "informed, written consent (including through an electronic means using the Internet) of the consumer that – (i) is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; (ii) at the election of the consumer that—(I) is given at the time the disclosure is sought; or (II) is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, which is sooner; and (III) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. § 2710(b)(2)(B).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

benefits to consumers of such procedural obligations are minimal. Indeed, subsections (i)-(iii) provide users with no additional information necessary to make an informed decision regarding having personal usage information shared with third parties; they only create materially burdensome—and free speech-chilling—compliance requirements.

A statute is overbroad and, "[l]itigants are permitted to challenge a statute . . . because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612. The number and breadth of VPPA claims brought against companies from all industries, described *supra* n.7, proves the language of the VPPA "fail[s] to distinguish between conduct that may be proscribed and conduct that must be permitted" and likely "cause[s] others not before the court to refrain from constitutionally protected speech." *Broadrick,* 413 U.S. at 612. This is because, based on a definition of "video tape service provider" as a "business" that "rents, sells, or delivers" audio visual materials, persons in any and all sectors, including restaurants, greeting card companies, and retail stores, may refrain from otherwise legal speech due to fear that they will fall under the VPPA's purview, simply because they operate a website that contains video content.

Additionally, § 1799.3 prohibits disclosure of "personal information *or the contents of any record*," without regard to whether the personal information or record is of a private nature. This does not advance any privacy interest at all—and at a minimum is far more extensive than necessary—because, if interpreted as Plaintiff is advocating, it broadly restricts covered entities from disclosing *any* information about their customers without first obtaining consent, even when that purported "disclosure" consists only of a company's use of a software program developed by a third party to collect data about the company's own customers, for the company's own use.

**C. Alternatively, The Court Should Partially Invalidate The Statutes.**

Pursuant to the Court's power to partially invalidate an unconstitutional provision of a statute, the Court should invalidate the portion of the VPPA that requires additional onerous steps past simple informed consent, including but not limited to 18 U.S.C. § 2710(b)(2)(B)(i)-(iii). *See Free Enterprise Fund v. Public Company Accounting Oversight Bd*., 561 U.S. 477, 508 (2010)

(“Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact.”); *Barr v. Am. Ass’n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2348–56 (2020) (severing unconstitutional provision rather than invalidating entire consumer privacy law).

The requirements of Section 2710(b)(2)(B)(i)-(iii) require far more than is necessary to protect any purported interest in protecting consumers’ privacy. There is nothing to suggest that providing consent to Quimbee to collect website browsing activity, does not provide the user with the information necessary to make an informed decision as to whether the user agrees to allow Quimbee to use a software tool developed by a third party to collect the user’s personal usage information on Quimbee’s website for Quimbee’s own use. Section 2710(b)(2)(B)(i)-(iii) should therefore be invalidated and video tape service providers should be allowed to provide notice to consumers and receive informed consent through other means.

Section 1799.3’s reference to “or the contents of any record” should likewise be invalidated since it is not limited to information of a private nature.

## V. ALTERNATIVELY, THE STATUTES ARE UNCONSTITUTIONAL AS APPLIED.

The VPPA, § 1799.3, and CIPA, as applied to Quimbee and the conduct at issue in this case, are far too vague and overbroad. If the statutes are interpreted as Plaintiff is advocating, Quimbee is potentially prohibited from using *any* software solutions developed by a third party to collect information about its own customers, for its own use. The statutes do not make clear that they apply to entities like Quimbee or to the customer relations management activities in the Complaint. Applying the statutes to Quimbee based on the allegations of this case would violate Quimbee’s Due Process and First Amendment rights. This Court, therefore, should find the statutes, as applied to Quimbee, are unconstitutional.

## VI. CONCLUSION

Quimbee respectfully requests that this Court dismiss Plaintiff’s Complaint with prejudice.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Dated: February 28, 2024

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: <u>/s/ *Teresa C. Chow*</u>
Teresa C. Chow

*Attorneys for Defendant*
SELLERS INTERNATIONAL LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES