**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Stefan Bogdanovich (State Bar No. 324525)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
sbogdanovich@bursor.com
jglatt@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ISAAC SHAPIRO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SELLERS INTERNATIONAL LLC,

Defendant.

Case No. 3:24-cv-00079-AMO

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: May 16, 2024
Time: 2:00 p.m.
Ctrm: 10

Case Filed: January 4, 2024

## TABLE OF CONTENTS

PAGE(S)


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Mr. Shapiro Plausibly States A VPPA Claim ..... 1

1. Courts Have Uniformly Held Websites With Educational Videos And Other Short-Form Video Content Are VTSPs ..... 1

2. Quimbee Knowingly Disclosed Mr. Shapiro's Name, Email Address, And The Videos He Requested And Obtained To HubSpot ..... 4

a. Courts Have Uniformly Held That The Unconsented Disclosure Of Personally Identifiable Information To One Person Is Actionable ..... 4

b. Courts Have Uniformly Held That First And Last Name And Email Address Are Personally Identifiable Information ..... 6

3. Courts Have Uniformly Held That Disclosures For "Website Analytics" Does Not Fall Within The VPPA's Ordinary Course Of Business Exception ..... 10

B. Mr. Shapiro Plausibly States A Cal. Civ. Code § 1799.3 Claim ..... 11

C. Mr. Shapiro States A CIPA Claim Under The Second And Fourth Clauses Of Penal Code § 631(a) ..... 12

D. Courts Have Uniformly Held These Statutes Comport With The First Amendment ..... 16

1. The Statutes Are Not Unconstitutionally Vague ..... 16

2. The VPPA And Its State Law Analog Do Not Violate The First Amendment ..... 17

3. The VPPA And Its State Law Analog Are Content-Neutral ..... 18

4. The VPPA's Consent Provision Is Not Onerous And Should Not Be Invalidated ..... 20

5. Quimbee's Remaining Constitutional Law Arguments Similarly Fail ..... 21

III. CONCLUSION ..... 21

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adams v. Am.'s Test Kitchen, LP*,
2023 WL 4304675 (D. Mass. June 30, 2023) .......... 5

*Aldana v. GameStop, Inc.*,
2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) .......... passim

*Ambrose v. Bos. Globe Media Partners LLC*,
2022 WL 4329373 (D. Mass. Sept. 19, 2022) .......... 3, 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 14

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) .......... 20

*Bd. of Trs. of State Univ. of New York v. Fox*,
492 U.S. 469 (1989) .......... 18

*Belozerov v. Gannett Co.*,
2022 WL 17832185 (D. Mass. Dec. 20, 2022) .......... 5

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) .......... 16, 17, 18

*Campos v. Tubi, Inc.*,
2024 WL 496234 (N.D. Ill. Feb. 8, 2024) .......... 5

*Cantu v. Tapestry, Inc.*,
2023 WL 4440662 (S.D. Cal. July 10, 2023) .......... 17

*Cantu v. Tapestry, Inc.*,
2023 WL 6451109 (S.D. Cal. Oct. 3, 2023) .......... 17

*Cappello v. Walmart Inc.*,
2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) .......... 20

*Carroll v. Chick-fil-A, Inc.*,
2024 WL 1091193 (N.D. Cal. Feb. 13, 2024) .......... 17

*Carroll v. Gen. Mills, Inc.*,
2023 WL 4361093 (C.D. Cal. June 26, 2023) .......... 17

*City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*,
596 U.S. 61 (2022) .......... 18, 19

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ........ 13

*Collins v. Pearson Educ., Inc.*,
2024 WL 895316 (S.D.N.Y. Mar. 1, 2024) ........ 5, 7

*Cousin v. Sharp Healthcare*,
2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) ........ 13

*Crownholm v. Moore*,
2024 WL 977676 (9th Cir. Mar. 7, 2024) ........ 16

*Czarnionka v. Epoch Times Ass'n, Inc.*,
2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ........ 5

*Dahlstrom v. Sun-Times Media, LLC*,
777 F.3d 937 (7th Cir. 2015) ........ 20

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ........ 13

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 6, 7, 8

*Feldman v. Star Trib. Media Co. LLC*,
659 F. Supp. 3d 1006 (D. Minn. 2023) ........ 5

*Ghanaat v. Numerade Labs, Inc.*,
2023 WL 5738391 (N.D. Cal. Aug. 28, 2023) ........ 2, 4, 7, 17

*Goldstein v. Fandango Media, LLC*,
2023 WL 3025111 (S.D. Fla. Mar. 7, 2023) ........ 5

*Greenley v. Kochava, Inc.*,
2023 WL 4833466 (S.D. Cal. July 27, 2023) ........ 13

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (Oct. 23, 2020) ........ 16

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) ........ 5

*Hernandez v. Chewy, Inc.*,
2023 WL 9319236 (C.D. Cal. Dec. 13, 2023) ........ 17

*Hernandez v. Container Store, Inc.*,
2024 WL 72657 (C.D. Cal. Jan. 3, 2024) ........ 17

*IMDb.com Inc. v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) ........ 19

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 2, 3

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........ 5

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ........ 9

*In re Hulu Priv. Litig.*,
2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ........ 4, 10

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 3, 16, 17

*Jackson v. Fandom, Inc.*,
2023 WL 4670285 (N.D. Cal. July 20, 2023) ........ 3, 4

*James v. Walt Disney Co.*,
2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) ........ 14

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 13, 14

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) ........ 5

*Louth v. NFL Enterprises LLC*,
2022 WL 4130866 (D.R.I. Sept. 12, 2022) ........ 2, 5, 10

*Maghen v. Quicken Loans, Inc.*,
2014 WL 12586447 (C.D. Cal. Oct. 28, 2014) ........ 16, 21

*Martinez v. D2C, LLC*,
2023 WL 6587308 (S.D. Fla. Oct. 10, 2023) ........ 4

*Massie v. Gen. Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022) ........ 12

*Mazo v. New Jersey Sec'y of State*,
54 F.4th 124 (3d Cir. 2022) ........ 19, 20

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ........ 4, 11

*People v. Guzman*,
11 Cal.App.5th 184 (Cal. Ct. App. 2017) ..... 12

*Rancourt v. Meredith Corporation*,
2024 WL 381344 (D. Mass. Feb. 1, 2024) ..... 5, 11

*Reed v. Town of Gilbert, Arizona*,
576 U.S. 155 (2015) ..... 18

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..... 12

*Rick's Elec., Inc. v. California Occupational Safety & Health Appeals Bd.*,
80 Cal. App. 4th 1023 (2000) ..... 11, 12

*Rodriguez v. Delta T LLC*,
2023 WL 9419152 (C.D. Cal. Dec. 12, 2023) ..... 17

*Rodriguez v. Hershey Co.*,
2023 WL 6798506 (S.D. Cal. Oct. 12, 2023) ..... 17

*Rodriguez v. Sony Comp. Ent. Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) ..... 10

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007) ..... 11, 12

*Saunders v. Hearst Television, Inc.*,
2024 WL 126186 (D. Mass. Jan. 11, 2024) ..... passim

*Sellers v. Bleacher Rep., Inc.*,
2023 WL 4850180 (N.D. Cal. July 28, 2023) ..... passim

*Snell v. G4S Secure Sols. (USA) Inc.*,
424 F. Supp. 3d 892 (E.D. Cal. 2019) (denying motion ..... 12

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) ..... 3, 4

*Stark v. Patreon, Inc.*,
656 F. Supp. 3d 1018 (N.D. Cal. 2023) ..... 17

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ..... 10

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ..... 13

*Tawam v. Feld Ent. Inc.*,
2023 WL 5599007 (S.D. Cal. July 28, 2023) ..... 3, 17

*U.S. v. Hansen*,
599 U.S. 762 (2023) .......... 16

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 12

*United States v. Hastie*,
854 F.3d 1298 (11th Cir. 2017) .......... 7

*Valenzuela v. Nationwide Mut. Ins. Co.*,
2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) .......... 13

*Yamada v. Snipes*,
786 F.3d 1182 (9th Cir. 2015) .......... 17

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) .......... 8

**STATUTES**

18 U.S.C. § 2710(a)(1) .......... 19

18 U.S.C. § 2710(a)(3) .......... 6, 19

18 U.S.C. § 2710(a)(4) .......... 19

18 U.S.C. § 2710(b)(1) .......... 4

18 U.S.C. § 2710(b)(2)(A)-(E) .......... 20

18 U.S.C. § 2710(b)(2)(B) .......... 19, 21

18 U.S.C. § 2710(b)(2)(E) .......... 10

18 U.S.C. § 2721 .......... 20

18 U.S.C. § 2721(a)(1) .......... 20

18 U.S.C. § 2721(b)(1)-(14) .......... 20

Cal. Civ. Code § 1799.3 .......... 1, 11, 12, 20

Cal. Civ. Code § 1799.3(a) .......... 19, 21

Cal. Penal Code § 631(a) .......... 21

**OTHER AUTHORITIES**

S. Rep. 112-258 .......... 21

## I. INTRODUCTION

Defendant Sellers International LLC ("Quimbee") provides an online study aid that, in exchange for a recurring fee, allows law students to stream case brief videos on its website. Unfortunately for the privacy rights of these students, Quimbee discloses the titles of these videos, along with students' first and last names and email addresses, to a third-party marketing company called HubSpot, Inc. ("HubSpot"). Quimbee also allows HubSpot to intercept the text of every search query entered by law students, and the chat messages they send. Because Quimbee did not obtain law students' consent to do any of this, it violated the Video Privacy Protection Act, its California state law analog, and California's Invasion of Privacy Act.

Quimbee moves to dismiss, raising peripheral arguments about why none of these laws apply to it, and it further argues that these laws violate the First Amendment. However, every argument Quimbee advances in its motion has been rejected. And for *most* of Quimbee's arguments, courts have rejected them *uniformly*. For the reasons set forth below, the Court should apply black-letter law and deny Quimbee's motion.

## II. ARGUMENT

### A. Mr. Shapiro Plausibly States A VPPA Claim

"[T]o plead a plausible claim under section 2710(b)(1), a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015).

#### 1. <u>Courts Have Uniformly Held Websites With Educational Videos And Other Short-Form Video Content Are VTSPs</u>

Defendant argues that it is not a video tape service provider because "Quimbee's business does not fall within the statutory language" of the VPPA, MTD at 7, because, first, "Plaintiff does not allege Quimbee's business is substantially involved in the conveyance of video content and significantly tailored to that purpose, or that renting, selling, or delivering videos is a focus on Quimbee's work," *id.*, and second, that "Plaintiff fails to allege the 'similar audio-visual materials'

element." *Id.* at 8. This is not so, and courts in this District have held that online educational websites that host short-form videos are video tape service providers ("VTSPs"). *Ghanaat v. Numerade Labs, Inc.,* 2023 WL 5738391, at *3 (N.D. Cal. Aug. 28, 2023).

Quimbee argues its "case brief videos, which are educational materials no more than six minutes in length" differ from the "hours-long video records such as motion pictures … that existed when Congress drafted the VPPA" and are therefore not "'similar audio-visual materials'" covered by the law. MTD at 8. But the Court in *Ghanaat* already rejected this very same argument: "Defendant opines that the VPPA was created with consumption of VHS tapes of feature films and television in mind and that the short, education-focused videos provided by defendant are too distinct to constitute audio-visual content under the statute." 2023 WL 5738391, at *3. "Notably, despite the proliferation of similar cases in recent years, defendant's motion does not cite a single case finding that the length or subject matter of a video is relevant to determining coverage by the VPPA. In contrast, plaintiff[] cite[s] multiple cases finding that a claim may be based on the sort of brief, online video content at issue here." *Id.* (holding that "plaintiffs plausibly allege" that a provider of short education-focused videos "is a video tape service provider"). Worse yet, Defendant's "argument that the VPPA applies only to providers of full-length movies contradicts the plain language of the VPPA. The VPPA concerns providers of 'prerecorded video cassette tapes or similar audio visual materials' with no stated restriction as to length." *Sellers v. Bleacher Rep., Inc.,* 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023) (website with "short video clips that form part of the sports news commentary" plausibly qualified as a VTSP). *See also Fan v. NBA Properties, Inc.*, Case No. 3:23-cv-05069-SI, ECF No. 48 at 5-6 (N.D. Cal. Mar. 26, 2024) ("NFT digital platform" allowing users to "buy, sell, and trade … pre-recorded video clips of … highlight-worthy plays" plausibly qualified as a VTSP); *Louth v. NFL Enterprises LLC*, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (holding that smartphone app containing video clips and sports highlights plausibly qualified as a VTSP); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (social media website hosting short user-posted video clips plausibly qualified as a VTSP). Even the fleeting "'cut scenes' in video games are clearly 'video content' covered by the VPPA" such that retailers that sell such video games qualify as VTSPs. *Aldana v. GameStop,*

*Inc.*, 2024 WL 708589, at *6 (S.D.N.Y. Feb. 21, 2024). This case law establishes that Quimbee's minutes long case brief videos are the kinds of "audio-visual materials" covered by the VPPA.

Quimbee also argues it is not "engaged in the business" of delivering videos. MTD at 7 (citing *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017)). But Plaintiff alleges that "Defendant … creates, hosts, and delivers thousands of videos on its website." Compl. ¶ 57. Quimbee quips that it has not necessarily created videos for *all* 44,800 of its indexed cases. MTD at 8, n.1. Even so, a website is still plausibly a video tape service provider where the plaintiff alleges it "'creates, hosts, and disseminates hundreds, if not thousands, of videos.'" *Ambrose v. Bos. Globe Media Partners LLC*, 2022 WL 4329373, at *1 (D. Mass. Sept. 19, 2022) (quoting complaint); *compare with* Compl., ¶ 57. In fact, courts in this District have held that relatively short and plain statements that a website "maintains a cache of videos and visual materials," is enough to satisfy the *Vizio* test at the pleading stage. *In re Facebook*, *supra*, 402 F. Supp. 3d at 799; *accord Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *3 (N.D. Cal. July 20, 2023); *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 851 (N.D. Cal. 2022). So regardless of whether Quimbee.com hosts 44,800 videos, 4,480 videos, or even 480 videos, Quimbee is still "engaged in the business of delivering … audio visual materials" as a VTSP.

What is more, Plaintiff goes above and beyond merely alleging that Quimbee.com hosts videos. He alleges that videos are an inextricable part of Quimbee's business model: Quimbee "provides a library of audio visual material to consumers <u>for a monthly or annual fee</u>." Compl. ¶ 57 (emphasis added). A "prominent offering for <u>paying</u> account holders are Defendant's Case Brief videos, which Quimbee routinely advertises as a significant component of its study aid services," including "on its front page." *Id.* ¶ 14 (emphasis added). "As Quimbee notes, '<u>we're famous for creating legal-education videos</u> that are fun to watch and easy to digest.'" *Id.* ¶ 15. (emphasis added). Courts following the *Vizio* test have held that "[t]he requirement that a defendant be 'engaged in the business … of rental, sale, or delivery' of video content is typically straightforward to apply in cases" like this one, "in which the defendant directly rents or sells … access to [video] content over the internet." *Tawam v. Feld Ent. Inc.*, 2023 WL 5599007, at *4 (S.D. Cal. July 28, 2023) (collecting cases). These allegations plausibly plead that Quimbee is a VTSP.

**2. Quimbee Knowingly Disclosed Mr. Shapiro's Name, Email Address, And The Videos He Requested And Obtained To HubSpot**

*a. Courts Have Uniformly Held That The Unconsented Disclosure Of Personally Identifiable Information To One Person Is Actionable*

Quimbee next argues that its transmission of information to HubSpot is not a disclosure because it is "merely a tool … to collect data." MTD at 9.

To the contrary, the Ninth Circuit holds that a plaintiff may "plead a plausible claim [by] alleg[ing] … the defendant disclosed 'personally identifiable information concerning any customer' to 'any person.'" *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (emphasis added); *see also* 18 U.S.C. § 2710(b)(1) ("A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable") (emphasis added).

HubSpot is a person. As is evident from the twenty cases cited below, corporations are "persons" under the VPPA. And as alleged here, "Quimbee violated the VPPA by knowingly disclosing personally identifiable information ('PII') of Plaintiff and class members … to HubSpot, Inc. without their consent." Compl. ¶ 4. And because the VPPA says disclosures to "any person" are actionable, it stands to reason that Quimbee's disclosure to HubSpot is actionable. The fact this "person" uses a tool to do its job is irrelevant.

In fact, there are dozens of decisions holding that the transmission of an individual's PII to other third-party internet vendors like Facebook Inc.—who also have automated tools to assist the website owner with "services like internal research, advertising, and analytics," *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *6–7 (N.D. Cal. Aug. 10, 2012) ("*Hulu I*")—constitutes a VPPA disclosure. *See Hulu I*, 2012 WL 3282960, at *6; *Ghanaat*, *supra*, 2023 WL 5738391, at *5; *Sellers*, 2023 WL 4850180, at *4 (denying motion to dismiss on the knowing disclosure element); *Jackson*, 2023 WL 4670285, at *3 (same); *Stark*, 635 F. Supp. 3d at 853 (same); *Fan*, *supra*, Case No. 3:23-cv-05069-SI, ECF No. 48 at 4 (same). Those are just the cases from *this* District.[1] And just like the

[1] *See also, e.g.*, *Aldana*, *supra*, 2024 WL 708589, at *7 (denying motion to dismiss on the knowing disclosure element); *Ambrose*, *supra*, 2022 WL 4329373, at *1 (same); *Martinez v. D2C, LLC*,

third-party vendor at issue here, courts have held that disclosures via other application programing interface tools—*e.g.*, HubSpot—to entities like Anvato, *see Louth*, *supra*, 2022 WL 4130866, at *2, Segment, *see Rancourt v. Meredith Corporation*, 2024 WL 381344, at *2 (D. Mass. Feb. 1, 2024), or Braze and DoubleClick, *see Saunders v. Hearst Television, Inc.*, 2024 WL 126186, at *2 (D. Mass. Jan. 11, 2024) are all also actionable "disclosures" under the VPPA. Quimbee does not cite—nor is Plaintiff aware of—any case holding otherwise.

*Ignoring all this authority*, Quimbee aims to rewrite over a decade's worth of VPPA case law by arguing that its transmission to HubSpot is not a disclosure. MTD at 9. However, the disclosures to HubSpot here are not any different from any one of the cases cited above involving disclosures via similar internet tracking technologies to Facebook, Anvato, Segment, Braze, or DoubleClick. Quimbee does not mention—let alone try to distinguish—any one of these decisions. Instead, Quimbee moans that "[i]f using software … constituted 'disclosure,' then no lawyer could ever use Outlook to communicate with a client without destroying attorney-client privilege." MTD at 9-10. This analogy is inapt: HubSpot actually compiles and analyzes Plaintiff's video consumption history, Compl., ¶ 21, whereas email providers only send emails from point A to point B and ***cannot open those emails and "read" their contents*** without consent. *See In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013).

Quimbee notes that the dictionary definition of disclose means "to make known." MTD at 9. The complaint shows that Quimbee made Plaintiff and Class members' names and emails known to HubSpot via screenshots showing the hashed title of the video "Stanley v. Georgia," the exemplar

---

2023 WL 6587308, at *3 (S.D. Fla. Oct. 10, 2023) (same); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1343 (N.D. Ga. 2022) (same); *Belozerov v. Gannett Co.*, 2022 WL 17832185, at *1 (D. Mass. Dec. 20, 2022) (same); *Goldstein v. Fandango Media, LLC*, 2023 WL 3025111, at *4 (S.D. Fla. Mar. 7, 2023) (same); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1017 (D. Minn. 2023) (same); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1334 (N.D. Ga. 2023) (same); *Adams v. Am.'s Test Kitchen, LP*, 2023 WL 4304675, at *4 (D. Mass. June 30, 2023) (same); *Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (same); *Campos v. Tubi, Inc.*, 2024 WL 496234, at *9 (N.D. Ill. Feb. 8, 2024); *Collins v. Pearson Educ., Inc.*, 2024 WL 895316, at *9 (S.D.N.Y. Mar. 1, 2024).(same). This is not an exhaustive list.

email "johnnysmithemail7@gmail.com," and an ID Token being sent to HubSpot. Compl. Figs. 5-9. Under the VPPA and Plaintiff's cited cases, this is enough.

*b.* *<u>Courts Have Uniformly Held That First And Last Name And Email Address Are Personally Identifiable Information</u>*

Quimbee next argues that its disclosures of Plaintiff's first and last name and email address are not personally identifiable information ("PII") under the VPPA because they arrive in a request header. MTD at 10. "This argument seeks to obscure the significance of Plaintiff[']s allegations," and is simply wrong. *Aldana*, 2024 WL 708589, at *8. As the *In re Hulu* court noted, "request headers … 'can contain the Facebook user ID,'" 2014 WL 1724344, at *5 (N.D. Cal. Apr. 28, 2014) ("*Hulu II*"), and that has not stopped courts from unanimously holding that such numbers are PII under the VPPA.

At issue here are two disclosures: those made in English, and those made in Base64.

**<u>Disclosures in English</u>**

As alleged in the complaint, Quimbee discloses to Hubspot a video-consumer's email address in English, along with the URL which contains the name of the video. Compl., Figs. 7 and 9, portions reproduced and enlarged below.

**Figure 7**

https://www.quimbee.com/cases/stanley-v-georgia

**Figure 9**

email: johnnysmithemail7@gmail.com

These two pieces of information squarely fall within the VPPA definition of PII: "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Ninth Circuit has expressly recognized that "an email address may very well readily enable an 'ordinary person' to identify an individual" and thus qualify as a PII under the VPPA. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017). Since *Eichenberger*, numerous courts have held that email addresses constitute PII under the

VPPA. *Ghanaat*, 2023 WL 5738391, at *4 (noting that social media profiles containing either "names or email addresses" would constitute PII); *Saunders v. Hearst Television, Inc.*, 2024 WL 126186, at *3 (D. Mass. Jan. 11, 2024) ("The allegations that Hearst disclosed plaintiffs' … email addresses … limns a claim that the information disclosed was PII."). As another court recognized, "[e]mail addresses fall within the ordinary meaning of 'information that identifies an individual.'… With a simple search engine or a service like Spokeo, an email address can also be used to find personal information such as a corresponding username or physical address." *United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017).

Quimbee entirely ignores this disclosure of email addresses in its motion. As Figure 9 shows, the email address is disclosed in English. Quimbee instead focuses its analysis only on the first and last names Quimbee discloses to Hubspot in the Base64 programming language. *See* MTD at 10. But that is an entirely separate disclosure, and an entirely separate VPPA violation.

**Disclosures in Base64**

First, Quimbee argues that the first and last names disclosed in Base64 are not PII because one must "take multiple steps to 'translate' this data into English." MTD at 10. Quimbee fundamentally misunderstands the relevant standard for the PII.

Contrary to Quimbee's assertions, the Ninth Circuit does ***not*** hold that information is PII only if a person of ordinary technical acumen can understand it. In fact, it holds the very opposite: "'personally identifiable information' must have the same meaning without regard to its recipient's capabilities." *Eichenberger*, 876 F.3d at 986 (emphasis added). Rather, *Eichenberger* holds that information is PII if it "readily enable[s] an 'ordinary person' to identify an individual" by using "modern technology." *Id.* And advancements in "modern technology may indeed alter—or may already have altered—what qualifies [as PII] under the statute." *Id.* For example, *Eichenberger* notes that "the GPS coordinates of a particular device" is likely PII even though most people lack the technical acumen to convert GPS coordinates into information that identifies a person. *Id.* And several courts following *Eichenberger* have expressly held that Facebook IDs contained in a "c_user cookie" were PII, even though "the c_user cookie cannot be read by the ordinary person." *Sellers*, 2023 WL 4850180, at *5; *Aldana*, 2024 WL 708589, at *8; *Collins*, 2024 WL 895316, at *7.

Although the *Eichenberger* test for PII has at times been called the "ordinary person" test, that is a bit of a misnomer. The *Eichenberger* test is better understood as an objective test, in contrast to the subjective test for PII used by the First Circuit in *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). *Yershov* held that the disclosure of video titles and "device identifier information" was PII under the VPPA because, when this information was subjectively in the hands of Adobe, it was "reasonably and foreseeably likely to reveal which ... videos [a person] has obtained." 820 F.3d at 486. This is because "Adobe takes this and other information culled from a variety of sources to create user profiles." *Id*. at 484 (emphasis added). So "Adobe has the 'game program,' so to speak, allowing it to link the … device identifier information to a certain person." *Id*. at 486. The Ninth Circuit rejected this subjective approach for an objective one, because "'personally identifiable information' must have the same meaning without regard to its recipient's capabilities. Holding otherwise would make the lawfulness of a disclosure depend on circumstances outside of a video service provider's control." *Eichenberger*, 876 F.3d at 985. Under this objective test, *Eichenberger* held that a "(1) Roku device serial number and (2) the names of the videos that [plaintiff] watched" were not PII because "that information *cannot* identify an individual unless it is combined with other data in Adobe's possession." *Id*. at 986 (emphasis in original). Here, however, the Base64 disclosure "is enough, on its own, to identify a person" and need not be "combined with other data." *Sellers*, 2023 WL 4850180, at *5 (emphasis added). Quimbee's confusion—sincere or feigned—about the *Eichenberger* test "seeks to obscure the significance of Plaintiff[']s allegations." *Aldana*, 2024 WL 708589, at *8.

As Plaintiff's complaint demonstrates, the ID token containing his first and last name in Base64 objectively allows an ordinary person to figure out his identity by using "modern technology." *Eichenberger*, 876 F.3d at 986. Modern technology makes "the Base64 language … as easily translatable as Serbian, Mongolian, or Swahili. And just as any ordinary person can readily cut-and-paste Russian text into Google Translate to figure out what it means in English, any ordinary person can cut and paste Base64 text into any one of myriad Base64 decoding websites and figure out what the Base64 text means." Compl., ¶ 28; *see also* Figs. 11-12. "Moreover, any ordinary

person can input Base64 text into one of several generative AI chatbots like ChatGPT, and the AI will instantly recognize that the text is Base64 and translate it for the person." *Id.* ¶ 33.

That the Base64 disclosure "'is a string of numbers and letters does not alter the conclusion. Code is a language, and languages contain names, and the string [at issue here] is the [Quimbee] user['s] name.'" *Sellers*, *supra*, 2023 WL 4850180, at *4 (quoting *Hulu II*, 2014 WL 1724344, at *14). "[T]he fact that Plaintiff's first and last name was disclosed in the commonly used Base64 language as opposed to the English language is immaterial." Compl. ¶ 34. A defendant cannot skirt liability under a United States law simply by speaking in a different language because "[u]nlike many other countries, the United States [has] no official language." *Id.* "No one would deny that I would violate the VPPA by passing someone an encrypted list of Judge Bork's video rentals—if my recipient and I both understood that we would use a mutually intelligible code." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1096 (N.D. Cal. 2015) ("*Hulu III*").

**"Https" Disclosures**

Lastly, Quimbee notes in a footnote that the disclosed information in one of the complaint's figures is sent via "https," so it "is sent in an encrypted format readable only by sender and recipient." MTD at 10, n.2. But an "https" does not change the PII that is disclosed to HubSpot—*i.e.,* HubSpot still receives an email in English and still receives the first and last names in Base64. "HTTP is like sending a post card … HTTPS is like sending a letter in a sealed envelope."[2] This is irrelevant to VPPA liability. A video store clerk would not be permitted to leak a list of Judge Bork's video tape rentals simply because she uses FedEx. Indeed, numerous cases have found Meta Pixel disclosures—also accomplished through "https" transmissions—are actionable under the VPPA. *See e.g.*, *Aldana v. GameStop, Inc.*, Case No. 1:22-cv-07064-LTS, ECF No. 1, Figs. 12-14, at p. 9 (S.D.N.Y.) (all showing "https" transmissions). This argument, like the others, simply "seeks to obscure the significance of Plaintiff[']s allegations." *Aldana*, 2024 WL 708589, at *8. "Courts across the

[2] *See* https://www.semrush.com/blog/http-vs-https/.

country… have indicated that providing a third party with PII that is legible to that specific third party is sufficient to state a claim under the VPPA." *Id.* Quimbee cites no case to the contrary.

### 3. **Courts Have Uniformly Held That Disclosures For "Website Analytics" Does Not Fall Within The VPPA's Ordinary Course Of Business Exception**

Defendant next argues that "Plaintiff's claim … fails because he has not alleged anything to infer that HubSpot can use the alleged communications for any purpose other than to provide its customer relations management solution to Quimbee." MTD at 17. This is a red herring. Courts have uniformly held that "shar[ing] data with online market research, ad network and web analytics companies [for] … services like internal research, advertising, and analytics… are not in the ordinary course of [a defendant]'s business of delivering video content to consumers." *Hulu I*, 2012 WL 3282960, at *6–7. As explained in *Saunders*, *supra*: "The VPPA has a narrow exception for disclosures made 'incident to the ordinary course of business.' 18 U.S.C. § 2710(b)(2)(E). '[O]rdinary course of business' means 'only debt collection activities, order fulfillment, request processing, and the transfer of ownership.' *Id.* § 2710(a). The alleged uses of the information here – 'marketing, advertising, and analytics' – do not fall within the exception's narrow list of permissible uses." 2024 WL 126186, at *4 (citing *Louth*, *supra*, 2022 WL 4130866, at *4).

Neither of the cases Quimbee cites—*Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618 (7th Cir. 2014) and *Rodriguez v. Sony Comp. Ent. Am., LLC*, 801 F.3d 1045 (9th Cir. 2015)—are helpful to its cause. In *Sterk*, the defendant outsourced its customer service call center to a third-party, and the court held that disclosures made in the course of "responding to customer service requests" constituted "request processing" and "order fulfillment." 770 F.3d at 625. Relatedly, in *Rodriguez*, "intra-corporate disclosures of consumers' personal information between Sony entities to sustain the operations of the PlayStation Network" "f[e]ll comfortably within the 'order fulfillment' or 'request processing'" prongs. 801 F.3d at 1054-55. Yet here, however, Plaintiff alleges that the purpose of Quimbee's disclosures to HubSpot were "for targeted advertising and remarketing." Compl., ¶ 61. And "to the extent the PII disclosure is in furtherance of an objective beyond the general upkeep of the operation, the ordinary course of business exception cannot apply … [and] targeted advertising goes beyond the management and operations of the business to, as

[plaintiff] contends, a purely pecuniary end." *Rancourt v. Meredith Corp.*, 2024 WL 381344, at *17 (D. Mass. Feb. 1, 2024) (distinguishing both *Sterk* and *Rodriguez* on this ground).

**B. Mr. Shapiro Plausibly States A Cal. Civ. Code § 1799.3 Claim**

"For the same reasons that [defendant] violat[es] of the VPPA, [defendant] also … violat[es] of California Civil Code § 1799.3." *Mollett*, 795 F.3d at 1067. The complaint plausibly alleges Quimbee is a "video record sales and rental service" for the same reasons it alleges it is a VTSP; Quimbee "discloses" law students' first and last names and email addresses, which constitute "personal information" under Cal. Civ. Code § 1799.3.

Moreover, the section 1799.3(6) exception for the disclosure of "names and addresses only for commercial purposes" does not apply because Quimbee does not merely disclose the names and addresses of law students, <u>but the titles of the videos they viewed</u> (along with their emails). The legislative history of the California law confirms it was written to "prohibit disclosure of <u>all but</u> the names and addresses of a customer's video-rental records." *See Doe v. Mubi*, 5:23-cv-05509-BLF, ECF No. 26-7, at 3 (N.D. Cal. Jan. 11, 2024) (quoting Senate Judiciary Committee Report on S.B. No. 2248, 1987-88 Regular Session (1988)) (emphasis added). This strongly suggests the "commercial purpose" exception was meant to apply to things like the sales of customer lists—which do not implicate the same privacy and intellectual freedom concerns inherent with the disclosure of the actual titles of videos people consume.

Lastly, Plaintiff's general allegations of Quimbee's scienter is sufficient at the pleading stage. As Quimbee's own cited authority states, "'willfully' is a 'word of many meanings whose construction is often <u>dependent on the context</u> in which it appears.'" *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007) (citation omitted) (emphasis added). But *Safeco* arose in the context of interpreting a federal law, and courts interpreting California laws have not followed its approach. Instead, "willfulness in the context of a [California] regulatory statute imposing civil penalties does not imply a showing of evil purpose. Rather, the term 'often denotes that which is 'intentional, or knowing, or voluntary, as distinguished from accidental,' and that it is employed to characterize 'conduct marked by careless disregard whether or not one has the right so to act.'" *Rick's Elec., Inc. v. California Occupational Safety & Health Appeals Bd.*, 80 Cal. App. 4th 1023, 1035–36 (2000).

And here, the complaint's allegations plausibly allege that Quimbee disclosed Mr. Shapiro's personal information intentionally, knowingly, or voluntarily and with a "careless disregard" to whether it had "the right so to act." *Id.*; *see also*, *e.g.*, *Sellers, supra*, 2023 WL 4850180, at *5 (plaintiff plausibly pled a defendant's knowledge under the VPPA where it installed a third-party's internet tracking software on its website). This is consistent with the legislative history of the statute, which was meant to "prohibit … businesses providing video cassette sales or rental services from disclosing the contents of records prepared or maintained by those individuals or business entities without the written consent of the subject of those records." *See Doe v. Mubi*, 5:23-cv-05509-BLF, ECF No. 26-7, at 1 (N.D. Cal. Jan. 11, 2024) (Senate Judiciary Committee Report, *supra*).

Even if the Court were to adopt the *Safeco* approach, it would still not justify granting Quimbee's motion. Quimbee asks to take it at its word it did not willfully violate Cal. Civ. Code § 1799.3 because it ***may—or may not—have*** known about the law and actually adopted an interpretation of the law that was not "objectively unreasonable." MTD at 13 (citing *Safeco*, 551 U.S. at 69-70). But without the benefit of discovery, Plaintiff has no idea what interpretation of the statute Quimbee took (if any). Courts in the wake of *Safeco* have noted that "willfulness may be alleged generally at the pleading stage." *Snell v. G4S Secure Sols. (USA) Inc.*, 424 F. Supp. 3d 892, 896 (E.D. Cal. 2019) (denying motion to dismiss).

### C. Mr. Shapiro States A CIPA Claim Under The Second And Fourth Clauses Of Penal Code § 631(a)

Quimbee's CIPA arguments similarly fail. Quimbee's first argument—that Mr. Shapiro's section 631 claim fails because he has no "reasonable expectation of privacy," MTD at 14, misstates the law. "Section 631 contains no such confidentiality requirement." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3, n.3 (N.D. Cal. Oct. 23, 2019); *see also People v. Guzman*, 11 Cal.App.5th 184, 192 n.7 (Cal. Ct. App. 2017) ("[T]he prohibition established by section 631 is not limited to 'confidential communications' as is the case for the prohibition against eavesdropping established by section 632."). None of the cases Quimbee cites support its misstatement of law. First, *United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) was not a CIPA case. Second, In *Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022), the Court only

considered the reasonable expectation of privacy argument for analyzing Article III standing. Quimbee does not contest Plaintiff's standing.

Quimbee's second argument—that the contents of communications were not disclosed, MTD, at 14—misstates the complaint's allegations. Mr. Shapiro alleges that "Quimbee has installed the HubSpot tracking code into the code on webpages on Quimbee.com which have a search bar or a chat box allowing users to type in text or click on prerecorded messages. The HubSpot tracking code sent the text typed into the search bar or those prerecorded chat box messages to HubSpot, Inc." Compl. ¶ 78. Because typing text into a search bar is essentially a question-and-answer communication between a website visitor and the website, *see* Compl. ¶ 81, courts have uniformly held that the "search queries … plausibly conveyed content," under section 631(a) of CIPA. *Cousin v. Sharp Healthcare*, 2023 WL 8007350, at *5 (S.D. Cal. Nov. 17, 2023).[3] The same is true of cases involving the user's interactions with website chat boxes. *Valenzuela v. Nationwide Mut. Ins. Co.*, 2023 WL 5266033, at *5 (C.D. Cal. Aug. 14, 2023) (plaintiff plausibly pled a CIPA claim where a third party allegedly "intercepted chat communications in real time") (cleaned up). Quimbee does not cite any cases which hold that search queries or chats are not content under CIPA. It merely cites inapposite cases involving "***keystrokes, mouse clicks, and pages viewed***." MTD at 15 (emphasis in original).

Quimbee's third argument—that Plaintiff cannot aid-and-abet eavesdropping on its own communications with Plaintiffs, MTD at 15-16—has been rejected by this Court. *Cody v. Ring LLC*, 2024 WL 735667, at *6 (N.D. Cal. Feb. 22, 2024) (Martinez-Olguin, J.). There, this "Court reject[ed] [the Defendant's] interpretation of Section 631 because it adds requirements about the 'intentions and usage of the prospective third party' that are not present in Section 631's second clause." *Id.* (citing *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023)).

---

[3] *Accord Doe v. Microsoft Corp.*, 2023 WL 8780879, at *9 (W.D. Wash. Dec. 19, 2023) ("Microsoft collects URLs containing search queries that could divulge a user's medical conditions, allergies, and immunizations. Accordingly, Plaintiff has adequately pled that Microsoft intercepted the contents of her communication with Kaiser for purposes of CIPA."); *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *3 (C.D. Cal. Nov. 20, 2023) ("text entry [and] search terms" were plausibly content of communications under CIPA); *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *17 (S.D. Cal. July 27, 2023) ("search terms used by a device user" were plausibly "the 'contents' of a communication").

Fourth, Quimbee argues that Mr. Shapiro "has not alleged anything to infer that HubSpot can use the alleged communication for any other purpose" than being a tape recorder. MTD at 17. Not so. Plaintiff alleges that "when HubSpot tracking code is imbedded in a website's code, it tracks a user's interactions with the website to assist the website owner with compiling and managing website analytics … and a host of other marketing and customer management benefits derived from … collecting website visitor and user data." Compl., ¶ 21 (emphasis added). *Accord Javier*, 649 F. Supp. 3d at 900 (holding that similar allegations that a third-party "monitors, analyzes, and stores information about visits to [defendant's] websites, and that [the third-party can use that information for other purposes, even if Javier has not alleged that they have done so in this case" plausibly alleged the third-party went "beyond the ordinary function of a tape recorder").

And contrary to Quimbee's fourth argument, Plaintiff does allege a violation of Section 631(a)'s second and fourth clauses. *See* Compl., ¶¶ 82, 83.[4] Although Mr. Shapiro alleges his communications were intercepted "in transit," *id.*, ¶ 81, Quimbee argues that Plaintiff does not allege any facts plausibly showing HubSpot intercepted the contents of Plaintiff's communications while in transit." MTD at 19. But Quimbee is clearly on notice of what the claims against it are, and the complaint's numerous allegations about HubSpot's functionality allow the Court to infer that the interceptions did occur instantaneously. *See* Compl., Figs. 5- 9; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era.").

In any event, Mr. Shapiro can easily amend the complaint to add screenshots showing HubSpot begins intercepting the text of messages law students send to Quimbee at the exact same time they are sent to Quimbee. The two screenshots below show that both HubSpot.com begins intercepting communications in real-time, before Quimbee.com receives them, and both HubSpot.com and Quimbee.com download the message exactly 138.94 milliseconds after a user first sends the message on the website. *See* Figures A and B, below; *accord James v. Walt Disney Co.*,

---

[4] Mr. Shapiro does not allege a violation of the first clause of Section 631(a), so he does not dispute Quimbee's argument that the first clause does not apply. MTD at 17. Quimbee misunderstands paragraph 81 of the Complaint. Paragraph 81 explains why searches queries and chats are the "contents of communications."

2023 WL 7392285, at *15 (N.D. Cal. Nov. 8, 2023) (holding allegations of real-time interceptions satisfy CIPA's in transit requirement)

**Figure A** (Quimbee.com receiving "talk to sales" message in 138.94 milliseconds)




**Figure B** (HubSpot.com receiving "talk to sales" message in 138.94 milliseconds)



### D. Courts Have Uniformly Held These Statutes Comport With The First Amendment

Every Court that has considered the constitutionality of the VPPA, its state law analogs, or CIPA have all rejected defendants' challenges and held that it passes constitutional muster. *Saunders, supra*, 2024 WL 126186, at *6 (holding that VPPA survived intermediate scrutiny and noting that "the court is aware of no cases in any circuit—and [defendant] cites none—holding that the VPPA violates the First Amendment"); *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 445-446 (S.D.N.Y. 2016) (Michigan state law VPPA analog did not violate First Amendment); *Stark,* 656 F. Supp. 3d at 1027-35 (N.D. Cal. 2023) (rejecting both facial and as-applied challenge to the VPPA); *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 611, n.11 (Oct. 23, 2020) (rejecting First Amendment challenge to CIPA); *Maghen v. Quicken Loans, Inc.*, 2014 WL 12586447, at *5 (C.D. Cal. Oct. 28, 2014) (rejecting First Amendment challenge to CIPA because "it is not clear that the mere recording of a … conversation is *per se* speech or expressive activity—certainly [defendant] cites no case so holding").

#### 1. <u>The Statutes Are Not Unconstitutionally Vague</u>

First, Quimbee incorrectly argues that "[t]he recent explosion of VPPA litigation is due to the VPPA's vague" definition of VTSP. MTD at 17. But the defendants in *in re Vizio*, *supra*, "also resort[ed] to … arguing that if Vizio is considered a video tape service provider, '[c]ountless products and services,' such as 'shipping services, Blu–Ray players, smartphones, app stores, cable boxes, wireless routers, personal computers, video game consoles, and even cars' would also fall within the statutory definition of video tape service providers." 238 F. Supp. 3d at 1222. The Court rejected this argument because "the statute's text once again alleviates Vizio's concerns. Most of these products or services are far too peripherally or passively involved in delivering video content to reasonably constitute 'the business' of delivering video content." *Id*. Indeed, the Ninth Circuit rejected a First Amendment challenge on vagueness grounds where the litigant "provid[ed] no evidence that the Act has actually been enforced so broadly, [and where] Plaintiffs' 'string of hypotheticals' depends on an expansive and unsupported reading of the Act." *Crownholm v. Moore,* 2024 WL 977676 at *3 (9th Cir. Mar. 7, 2024) (citing *U.S. v. Hansen*, 599 U.S. 762, 782 (2023)).

As the *in re Vizio* court explained, it only applies to businesses substantially involved in conveying videos and whose business model is significantly tailored to serve that purpose. 238 F. Supp. 3d at 1221. The overwhelming majority of courts in this Circuit have applied this straightforward test, and there is nothing vague about it. In the last few months, within this Circuit alone, courts applying the *Vizio* test have dismissed cases against a cereal maker, *Carroll v. Gen. Mills, Inc*., 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023); a container retailer, *Hernandez v. Container Store, Inc*., 2024 WL 72657, at *2 (C.D. Cal. Jan. 3, 2024); a pet foods retailer, *Hernandez v. Chewy, Inc*., 2023 WL 9319236, at *3 (C.D. Cal. Dec. 13, 2023); a fan retailer, *Rodriguez v. Delta T LLC*, 2023 WL 9419152, at *3 (C.D. Cal. Dec. 12, 2023); a high-fashion brand, *Cantu v. Tapestry, Inc*., 2023 WL 4440662, at *8 (S.D. Cal. July 10, 2023) and *Cantu v. Tapestry, Inc*., 2023 WL 6451109, at *4 (S.D. Cal. Oct. 3, 2023); a monster truck rally promoter, *Tawam*, *supra*,, 2023 WL 5599007, at *4; a chocolate manufacturer, *Rodriguez v. Hershey Co*., 2023 WL 6798506, at *2 (S.D. Cal. Oct. 12, 2023); and a fast food restaurant, *Carroll v. Chick-fil-A, Inc.*, 2024 WL 1091193, at *1 (N.D. Cal. Feb. 13, 2024).

"With the narrowing gloss, these definitions are sufficiently precise to provide 'a person of ordinary intelligence fair notice of what is prohibited.'" *Yamada v. Snipes*, 786 F.3d 1182, 1190 (9th Cir. 2015). A person of ordinary intelligence can read *Ghanaat v. Numerade Labs*, *supra*, and determine that operating a website that is substantially involved in delivering "short, education-focused videos" for a monthly fee would likely be found to be a VTSP under the statute. 2023 WL 5738391, at *3.

In addition, Quimbee provides no analysis as to why CIPA is unconstitutionally vague and so that argument should similarly be rejected.

**2. <u>The VPPA And Its State Law Analog Do Not Violate The First Amendment</u>**

Every Court that has considered the VPPA and its state law analog's constitutionality has held that it is a restriction on commercial speech that satisfies intermediate scrutiny. *Saunders*, *supra*, 2024 WL 126186, at *5-*6; *Boelter*, *supra*, 192 F. Supp. 3d at 445-446; *Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018, 1027–35 (N.D. Cal. 2023). To survive intermediate scrutiny, "the VPPA must

evince a 'fit between the legislature's ends and the means chosen to accomplish those ends' that is 'not necessarily perfect, but reasonable.'" *Saunders*, 2024 WL 126186, at *5 (citing *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 481 (1989)). As the court explained in *Saunders*, the VPPA readily satisfies this test:

> First, Congress's interest in enacting the VPPA was to "preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." The Supreme Court has repeatedly recognized the sanctity of personal privacy. Second, restricting Hearst from disclosing to third parties the precise videos that plaintiffs viewed alongside plaintiffs' PII directly and materially advances that interest. Third, the court can conceive of no legitimate non-commercial First Amendment interest of Hearst that its exploitation of plaintiffs' PII serves. Finally, the VPPA is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers. The court is satisfied that the "fit" between Congress's goal of protecting privacy in this realm and its means to do so is at least reasonable.

2024 WL 126186, at *5 (D. Mass. Jan. 11, 2024).

The same analysis would apply to the VPPA's California state law analog. *See Boelter*, *supra*, 192 F. Supp. 3d at 445-446 (Michigan state law analog to VPPA survived intermediate scrutiny for substantially the same reasons).

### 3. <u>The VPPA And Its State Law Analog Are Content-Neutral</u>

What is more, based on recent Supreme Court guidance, the VPPA and its California analog are both facially content-neutral consent schemes, so the laws are subject to an even more lenient standard of review. In *Saunders*, *Boelter*, and *Stark*, the courts all assumed the VPPA was a content-based restriction on speech based on *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 163 (2015), which held that a law is content-based when it "applies to particular speech because of the topic discussed." But the Supreme Court recently clarified that "absent a content-based purpose or justification," a time, place, or manner "distinction is content neutral and does not warrant the application of strict scrutiny." *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022).

Like the law at issue in *City of Austin*, the VPPA and Section 1799.3 are "agnostic as to content." *Id*. These video privacy laws do not consider the kind of movie titles a VTSP or similar business discloses. They can be political films on hot-button issues, comedy films, religious films, or simply bad films with awful critical reviews. Instead, the video privacy laws provide that if a VTSP or similar business is going to disclose that information, it must obtain "informed written consent" beforehand. 18 U.S.C. § 2710(b)(2)(B); Cal. Civ. Code § 1799.3(a). In this way, these video privacy laws are not too different from protest permitting schemes in effect throughout the nation that allow Americans to protest about anything—as long as they get permission to clear the streets first.

In the wake of *City of Austin*, the Third Circuit held that another law's "consent requirement is content neutral." *Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 149 (3d Cir. 2022). In *Mazo*, the Third Circuit held that a law requiring a speaker to obtain an individual's consent before naming that individual in a campaign slogan was a content-neutral regulation on speech. 54 F.4th at 149. The "consent requirement falls into a third category of permissible neutral line-drawing [mentioned in *City of Austin*] that distinguishes between speech based on extrinsic features unrelated to the message conveyed." *Id*. The same is true of the VPPA and its state law analog. In fact, the Ninth Circuit in *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1124 (9th Cir. 2020) expressly mentioned the VPPA as a "statute[] [that] 'regulate data collection and disclosure' without implicating the First Amendment [by] regulat[ing] the misuse of information by entities that obtain that information from individuals through some exchange."

Like campaign slogan law at issue in *Mazo*, the VPPA and its state law analog's application are based on "extrinsic features unrelated to the [particular video title] conveyed," *Mazo*, 54 F.4th at 149. These extrinsic features include whether the discloser is a VTSP or video recording sales or rental service provider, 18 U.S.C. § 2710(a)(4); Cal. Civ. Code §1799.3(a), and, in the case of the VPPA, whether the subject of the information is a "consumer," *see* 18 U.S.C. § 2710(a)(1). The communicative content of the disclosure—whether the disclosure contains the individual's "personally identifiable information" or "personal information," 18 U.S.C. § 2710(a)(3); Cal. Civ. Code §1799.3(a), only matters to determine whether the consent requirement applies at all. The

exact same was true in *Mazo*: "the communicative content of the slogan—*i.e*., whether the slogan names an individual or a New Jersey incorporated association—only matters to determine whether the consent requirement applies at all." 54 F.4th at 149.

Similarly, in *Dahlstrom v. Sun-Times Media, LLC*, the Seventh Circuit held that the similarly written federal Drivers' Privacy Protection Act, 18 U.S.C. §2721, *et seq.* was also a content-neutral privacy law which also prohibited the disclosure of personal information. 777 F.3d 937, 949–50 (7th Cir. 2015). In reaching this conclusion, *Dahlstrom* held that the law was content-neutral because "Congress crafted the DPPA's limitation on disclosure of personal information not because it disagreed with the message communicated by drivers' personal details, but in order to keep individuals' identifying information out of the hands of potential stalkers." *Id*. at 950. What is more, like the VPPA and Section 1799.3, which only focuses on disclosures from VTSPs and similar businesses, the DPPA only focuses on disclosures from state DMVs. *See* 18 U.S.C. § 2721(a)(1). This too, contributed to the content-neutrality determination. *Id*. at 949. Both statutes are "agnostic to the dissemination of the very same information acquired from a lawful source. The Supreme Court has concluded that disclosures that are prohibited 'by virtue of the source, rather than the subject matter' are easily categorized as content neutral." *Id*. (citing *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001)). Finally, the VPPA, which has a few narrowly tailored exceptions permitting disclosures, 18 U.S.C. § 2710(b)(2)(A)-(E), as does the DPPA, 18 U.S.C. § 2721(b)(1)-(14), is acceptable because the "exceptions are not premised on a preference for one category of speech over another; rather, they permit disclosure under those limited circumstances in which Congress deemed the public safety risk to be minimal." *Dahlstrom*, 777 F.3d at 950.

### 4. **<u>The VPPA's Consent Provision Is Not Onerous And Should Not Be Invalidated</u>**

Quimbee even argues that the VPPA's consent provision is "onerous" and should be invalidated. Quimbee's argument is not well-taken. First, VPPA compliance is remarkably easy. As another court in this district noted, it is not "burdensome to design a website whereby consumers must click a box confirming their consent to disclosures involving video purchases and click a separate box confirming their consent to all other applicable policies and terms." *Cappello v.*

*Walmart Inc*., 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019). Second, Congress already amended the VPPA in 2013 to make it easier for companies to "obtain a consumer's informed, written consent to disclose video viewing information to a third party on an ongoing basis … through the Internet." S. Rep. 112-258, 5-6. This amendment was the brainchild of lobbyists from "Adobe, AOL, eBay, Facebook, IBM, LinkedIn, Microsoft, Netflix, Symantec, Verizon, Business Software Alliance, Computer and Communications Industry Association, Newspaper Association of America, Software & Information Industry Alliance, and TechAmerica." *Id*. at 5.

#### 5. <u>**Quimbee's Remaining Constitutional Law Arguments Similarly Fail**</u>

Quimbee provides no analysis as to why the First Amendment is even implicated by CIPA, and so that argument should similarly be rejected. *See Maghen*, 2014 WL 12586447, at *5 (rejecting First Amendment challenge to CIPA because "it is not clear that the mere recording of a [] conversation is *per se* speech or expressive activity—certainly [defendant] cites no case so holding").

Lastly, Quimbee's as-applied challenge is entirely based on its own speculation that it would be "potentially prohibited from using any software solutions developed by a third-party to collect information about its own customers." MTD at 24. This is patently untrue. Quimbee can readily comply with all these laws if it gets its own customers' consent beforehand. *See* 18 U.S.C. § 2710(b)(2)(B) (noting that a VTSP "may disclose [PII] … with the <u>**informed, written consent**</u> (including through an electronic means using the internet) of the consumer"); Cal. Civ. Code § 1799.3(a) (prohibiting disclosures "without the <u>**written consent**</u> of the individual"); Cal. Penal Code § 631(a) (prohibiting interception "without the <u>**consent**</u> of all parties to the communication") (emphases added). Quimbee's failure to do so does not make it a free speech advocate; it makes it yet another company that simply disregards its customers' privacy.

## III. CONCLUSION

For these reasons, Quimbee's Motion to Dismiss should be denied. Alternatively, the Court should give Plaintiff leave to amend.

Dated: March 28, 2024

**BURSOR & FISHER, P.A.**

By: /s/ *Stefan Bogdanovich*
Stefan Bogdanovich

Neal J. Deckant (State Bar No. 322946)
Stefan Bogdanovich (State Bar No. 324525)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
sbogdanovich@bursor.com
jglatt@bursor.com

*Attorneys for Plaintiff*